UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ESTELLA YVONNE McCLENDON | CIVIL ACTION NO. 07-cv-1727 |
| VERSUS | JUDGE HICKS |
| U.S. COMMISSIONER SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Estella Yvonne McClendon ("Plaintiff") filed an application for Disability Insurance Benefits and Supplemental Security Income payments. Plaintiff, who was 49 years old at the time of her hearing, has a twelfth-grade education and past work experience that includes employment as an assembly line worker for a plywood factory. She alleges that she became disabled in 2005 due to both physical and psychological problems.

ALJ D. Whit Haigler, Jr. held a hearing and issued a written decision that Plaintiff was not disabled. The Appeals Council denied a request for review, and Plaintiff filed this judicial appeal pursuant to 42 U.S.C. § 405(g). The briefing schedule requires the plaintiff to specify any assigned errors. Plaintiff lists two: (1) a general assertion that the ALJ did not have substantial evidence to support his decision, and (2) an assertion that there was not sufficient evidence that Plaintiff could maintain a job. It is recommended, for the reasons that follow, that the Commissioner's decision be reversed and this case be remanded for

further proceedings, particularly the consideration of evidence that was not presented to the ALJ but was placed in the record before the Appeals Council.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Substantial Evidence Review**

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003). See also Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). He found that Plaintiff had not engaged in substantial gainful activity (step one) since her alleged onset date. He then found that Plaintiff had tenosynovitis of the right thumb, pain disorder associated with both psychological factors and general medical condition, and an adjustment disorder with depressed mood. Those impairments were found

to be severe within the meaning of the regulations (step two), but not severe enough to meet or medically equal a listed impairment (step three) that would mandate an immediate finding of disability without regard to Plaintiff's age, education, or vocational factors.

The ALJ next reviewed Plaintiff's abilities and limitations and assessed her residual functional capacity ("RFC"). He found that Plaintiff retained the RFC to perform light work activity,[1] reduced by moderate limitations in working with supervisors or co-workers with interpersonal interaction or discussion, and making judgments on simple decisions. Moderate was defined to mean the person could still function satisfactorily with perhaps a one-third impairment in those areas.

The ALJ then called upon a vocational expert ("VE") for testimony as to whether a person in Plaintiff's position could perform the demands of Plaintiff's past relevant work (step four). The VE testified that a person such as Plaintiff with the assessed RFC could not perform her past job as plywood patcher (medium), but could perform a past job as plywood stock grader. The ALJ accepted that testimony, so the analysis terminated at step four with a finding that Plaintiff was not disabled.

---

[1]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though a job may require lifting of only very little weight, it will still be classified as light rather than sedentary if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. A person must have the ability to do substantially all of these activities to be found capable of performing the full range of light work. 20 C.F.R. §§ 404.1567(b) and 416.967(b).

Plaintiff does not assert any particular legal errors in the ALJ's analysis or issues in connection with the VE's testimony. Rather, she makes only a general assertion, based on a discussion of some of the medical evidence, that she is disabled. Thus, her argument is more an attack on the RFC assessment than any other aspect of the decision.

The medical records show that Plaintiff had an orthopedic examination in July 2005. Dr. Edward Morgan evaluated Plaintiff's complaint of chronic right thumb pain, stiffness, catching and locking. Plaintiff was very tender over the A-1 pulley of the thumb, but she had full motion of the wrist, full range of motion of the spine, and the examination was otherwise unremarkable. Dr. Morgan recommended setting up a right trigger thumb release. Tr. 128-29. Dr. Mary Kim performed the surgery in May 2006, and there were no complications. Tr. 178-81. Notes from a July 7, 2006 therapy session indicate that Plaintiff was tolerating therapy well, although with a decrease in thumb flexion. Goals were set to improve that issue, as well as grip and pinch ability. Tr. 177.

Plaintiff was seen by Dr. Kim in December 2006, about six months after the surgery, and Plaintiff complained that she still had some stiffness in her thumb and pain at the base. She also complained of constant shoulder pain, for which she was taking Tylenol. The examination showed that Plaintiff could flex/extend her fingers and the thumb joint. The examiner wrote that Plaintiff's general symptoms may be secondary to arthritis rather than the trigger finger, which had been released. Tr. 222-23.

Dr. Webb Sentell, a clinical neuropsychologist, conducted a consultative examination in December 2005. Plaintiff reported a history of depression that had worsened since she began experiencing the pain caused by the trigger thumb (that had not yet received surgery), but Plaintiff said she had never sought psychiatric or mental health treatment. She was then taking anti-depressant medication. Plaintiff did not exhibit evidence of cognitive deficits, but she showed evidence of impulsivity in social judgment and somewhat limited problem solving skills. Tr. 131-33.

Dr. Richard Galloway, a rehabilitation counselor, interviewed Plaintiff at the request of her counsel. The interview was conducted in July 2006, soon after the thumb surgery. Plaintiff said she was still having significant discomfort in her right hand, did not drive, and she needed considerable help with household duties. Testing indicated an average range of intelligence and sufficient academic ability to perform numerous jobs. Dr. Galloway concluded that Plaintiff was still in recovery from her recent surgery, so it would be difficult for her to perform any job at that time because the hands are used in almost all work, particularly unskilled activity. Tr. 119-23.

Plaintiff and her husband testified at the hearing in January 2007. She stated that she had worked steadily for about 15 years at the same plant until a physician told her to stop working in 2005 because of the problems with her right hand. Neither the ALJ nor counsel asked Plaintiff to describe her current, post-operative condition with respect to her hand, but Plaintiff offered a general statement that she often complained about pain in her back, arm,

and hand. Plaintiff's husband testified about the difficulty Plaintiff had before the surgery, but he also offered only a general statement that her current condition was something that "just goes and come on different things, you know." He added that a problem may exist for two or three days in one area, "and it just kinda moves around to different parts of her body." He said that Plaintiff was able to wash clothes, clean the house, mop and vacuum, with a little help and some pain. Tr. 288-308.

Dr. Kim was deposed in February 2007, about a month before the ALJ issued his written decision, but it appears the transcript of Kim's testimony was not filed until the case was before the Appeals Council. Dr. Kim interpreted some of the medical records regarding Plaintiff's treatment. She testified that the thumb would ordinarily have a range of 90 to 100 degrees, but after therapy Plaintiff was only able to bend the thumb 30 degrees. At the December 2006 visit, the last time Dr. Kim saw Plaintiff, Plaintiff complained of constant shoulder pain and other symptoms. Dr. Kim wrote in her notes no Tinel's sign, which reflected that an examination of the wrist did not indicate tingling that might suggest carpal tunnel syndrome. Dr. Kim had also noted that there was no pain on forced pronation or supination, which she said was a manipulation of the median nerve in the forearm that was done in an effort to detect any symptoms of carpal tunnel syndrome. Plaintiff did not exhibit any symptoms. Dr. Kim had suggested X-rays, but Plaintiff did not have them done because she was busy, so Dr. Kim wrote Plaintiff another prescription for an X-ray to evaluate her hand. She also asked for an EMG and a nerve conduction study of the right arm. At the time

of the deposition, those studies had not been done. Dr. Kim said those studies might pick up a compression neuropathy that she could not detect on physical exam. Tr. 267-77.

Another exhibit filed with the Appeals Council is a report of a nerve conduction study conducted in May 2007. Dr. Courtney's assessment was that it was an abnormal study. He wrote: "Electrodiagnostic evidence of right median sensori-motor focal demyelinating neuropathy at the wrist consistent with carpal tunnel syndrome." Tr. 278-80. Dr. Kim's thought that the test might reveal problems not disclosed by her physical examination appears to have been well founded.

The Commissioner's final decision, the decision that is to be reviewed by the courts, includes the Appeals Council's denial of a request for review and requires the court to consider (in determining whether there is substantial evidence to support the decision) evidence that was submitted for the first time to the Appeals Council. Higginbotham v. Barnhart, 405 F.3d 332 (5th Cir. 2005). Neither Plaintiff nor the Commissioner mention the new evidence in their briefs, but it appears to be significant. Plaintiff testified of continuing difficulties with her hand and arm, but the ALJ found the complaints of pain unsupported by the objective medical evidence. There is now evidence, not presented to the ALJ but nonetheless legally relevant, which might cause a reasonable mind to assess Plaintiff's credibility in a different fashion. The record also benefits from Dr. Kim's testimony, which that elaborates upon the brief notes that were all the ALJ had to consider. It appears that the

ALJ and the Commissioner (in his brief) interpret the notes to suggest a better recovery than what is reflected by Dr. Kim's testimony.

The new evidence suggests the reasonable possibility that Plaintiff has a limitation with respect to her dominant extremity, but the RFC assessed by the ALJ did not include any limitation with regard to the use of the right hand or arm. To the contrary, the RFC included a finding that Plaintiff could frequently push/pull with the upper extremities and perform gross handling.

Although the ALJ did not impose a limitation with respect to the right extremity, he did ask the VE to consider that the person had a moderate impairment in pushing and pulling with the right, dominant extremity. The VE said that a person with the RFC to perform light work, that push/pull impairment, and the other hypothetical impairments could perform the stock grader job. But when the ALJ asked the VE to "ratchet up" the pushing and pulling limitation from one-third to two-thirds impaired, the VE testified that the person could not perform the stock grader job.

The court could make assumptions about how the ALJ might have assessed the additional evidence, particularly the results of the nerve conduction study, that was presented to the Appeals Council, but the framework of the disability claims system relies on the ALJ weighing the evidence, making credibility decisions, analyzing the VE testimony, and assessing the degree of any limitations. The courts are then confined to a limited appellate review of the final decision. This court would be overstepping its role to weigh the new

evidence in the first instance and essentially render a de novo decision of the claim. The undersigned finds that, given the new evidence, it cannot be said with confidence that there is substantial evidence to support the Commissioner's final decision, so the appropriate remedy is to reverse the decision to deny benefits and remand this case to the agency for further proceedings.

On remand, Plaintiff and the agency may further explore the issues addressed herein or any other relevant matters. See 20 C.F.R. § 404.983 (following a federal court remand, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case."). See also Social Security Law and Practice, § 55:74 (there is ordinarily "no limit on a claimant's supplementing the record on remand" after a sentence four or sentence six remand). This will permit the parties to gather all relevant evidence and present it to an ALJ for a fully informed decision.

Accordingly;

**IT IS RECOMMENDED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision to deny benefits be **reversed** and this case be **remanded** to the Commissioner for further proceedings.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 16th day of December, 2008.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE